Final case for this morning, Dora Thompson v. State Farm. We'll hear from the appellant. May it please the Court, I'm John Purcell for Plaintiff Appellant Dora Thompson. This is a statutory violation under the Texas Insurance Code. The plaintiff submitted a claim for hail damage to her roof. The State Farm inspected the roof and determined that there was some hail damage, but that the damage was limited to some soft metals, like the gutters, and that there was only about a little bit over $500 of damage. Therefore, below the deductible, and no payment was made. Ms. Thompson disagreed. She invoked appraisal. The appraisal panel looked at it, and the plaintiff's appraiser and the umpire signed an appraisal award for $57,000, which included replacement of the entire roof and a little bit more of maybe another 20 feet or something of gutters. The main dispute here was the roof. State Farm denied payment of the appraisal award, stating that the appraisers had made a coverage decision. Their letter did explain what that coverage decision was, but they denied payment based on that basis. We filed suit. Plaintiff's filed summary judgment, arguing that we couldn't segregate covered versus excluded damage. Also, that we couldn't prove that the single storm caused the damage. District Court granted the summary judgment, saying we didn't have any evidence of the amount of repairs, and that we couldn't segregate damages. So there are a lot of interrelated issues here, but there was an appraisal award, which determined the amount of the loss of $57,000. Counsel, let me ask you about the appraisal and how it applies under Texas law. The actual appraisal says the amount is without consideration of any deductibles, any and all prior payments. They'll be subtracted. It's made subject to the policy terms, conditions, and exclusions. On the face of it, it looks as if if you got a contractor to fix your roof, you would pay them $57,000 without any consideration of what is the policy cover. And then, obviously, State Farms indicated policy covers none of that. Texas law gives some weight to the appraisals, but it does seem to me, to some extent, depends on the facts. Do we know what this appraisal appraiser was told to do? Was it told to estimate the cost of replacing the roof, and that would cost $57,000? Well, the appraisers were . . . They knew the . . . Are there written instructions to the appraisal? No, but there are . . . The dispute between the parties was whether this was preexisting damage or was it hail. Understood, but I'm trying to figure out the role of the appraisal. And so, what was the appraiser told to do, and how do we know? That, I don't know what they were told to do, but under Texas law, appraisers are able to distinguish between preexisting conditions and . . . But they're told to. And I'm trying to figure out, was this appraiser told to do that, or just to figure out the cost of replacing the roof? The evidence, that I don't know. The evidence, as I remember it, is that there was a dispute about whether it was hail or not. And State Farms said, we're reserving our rights, and agreed to the appraisal process, but said that that would be a coverage issue. The parties fully briefed the appraisal in front of the magistrate, and yet the magistrate's opinion doesn't virtually even acknowledge the appraisal. That's sort of baffling, and maybe these are some questions I'll ask State Farm, because it creates a real difficulty accepting that the loss amount was less than the deductible. Do you agree with what I've just said? But without a reply brief from you, what my difficulty in this case is, is where is there any competent summary judgment evidence that the storm on September of . . . The year before Ms. Thompson reports it, on September 28th, is causative. In other words, the appraisal didn't really do that, so Harrison and Thompson are very equivocal. I mean, commendably, neither of them says, oh, this damage happened on that date. Right, and we had alleged that date, but during the discovery, our expert said, well, I can't tell when exactly it did happen. But he did know that it happened within, you know, two, three, four years because of the aging of the damage. But at the same time, this policy had covered that State Farm had insured that property since the home was built. That's on page 15 of your brief. Your position as to coverage is that the loss could have happened any time from 2007 on. Because State Farm was the only company that ever insured it . . . So you're acknowledging that we don't have . . . this loss event can't be pegged to the 28th. We can't prove an exact date. Okay, so then . . . But if there is accidental and direct physical loss to the roof that occurred while State Farm covered, insured the property, that accidental and direct physical loss is covered. And if there is any accidental and direct physical loss that had to occur while State Farm insured it because State Farm was the only company that ever insured it. No, but could a homeowner go back 15 years and say, well, I've discovered that this damage occurred 15 years ago when Geico, State Farm, Allstate, whichever the insurance company was, was covering my house. Therefore, I'm making a claim under that policy. I mean, I don't think a homeowner can do that. The policy is no longer in force. Oh, you mean if they changed companies? Or do you mean . . . Either way. Okay, even with single carrier? Well, she didn't get a policy at the beginning that would go into perpetuity. That's the difficulty. We don't really know what exclusions existed in the 2000 . . . hypothetically, the 2008 policy. Well . . . And then that really would run into sort of the concurrent causation doctrine problem if we're saying the lost year was day two of her ownership. I thought the argument throughout has been it happened on the 28th of September. Well, the evidence, given the problem with determining the exact date, we had to say that the policy was in place the entire time. It's not just exact date, 28th, 27th. It's what year it occurred. Isn't that part of it, that you had more than one perhaps hailstorm that would have affected this property? It's possible that there was more than one. So some health damage may have occurred in 2021, some health damage maybe in 2019. That's . . . And since it's all state foreign policy, you can sue . . . you can make this claim, I think, is your position. That's our position is that because the policy number doesn't change, the policy automatically renews every year, but the policy number is the same. It doesn't . . . it's not . . . they don't issue a new policy. Now, maybe there's an endorsement or something. Well, but that's just it. New terms, new endorsements, new deductibles, new things, coverage changes over time, policy year to policy year, which means it seems highly relevant to be able to point to a particular policy and say, this is when this damage occurred, my loss, my covered loss, and this is why it's covered. You can't just travel into the fact that, well, I had State Farm as my insurance company all this time. Well, if there is a concurrent causation because of an exclusion, the defendant would have to plead that. Well, set concurrent causation aside, I mean, I grew up on the Mississippi Gulf Coast. The State Farm policies there today, post-Katrina, 20 years post-Katrina, are radically different than what they were pre-Katrina because deductibles have changed, coverage has changed, the way they compute the deductibles. All that sort of thing has changed over time, so you can't just go back and say, well, I think this actually was caused by Katrina after all, and since I've had State Farm this whole time, even if it's gotten worse over time, I'm going to basically put in a claim for the whole amount now, today. You can't do that, can you? Well, no. If the damage got worse because of the time, that would be different. If there's hail damage to the roof, if there's actual direct physical loss to the roof, that's covered under the terms of the policy. But it begs the question of when it occurred, because if it got worse over time, that worsening wouldn't be covered, correct? Worsening would not, but if there's actual direct physical damage and that's covered and you're not claiming benefits for the worsening, you're just asking for coverage of the actual direct physical loss. Without evidence of when this damage occurred, specifically, whether it's not by the day, but by the month and the year, how can you prove that what happened in September of 2021 wasn't just worsening that wouldn't be covered? Well, is the question, if there's, if the question is, were there possibly multiple storms, where there was actual direct physical loss by hail, then additional actual direct physical loss by hail, our position is that both those events are, that's all actual direct physical loss by hail. I don't, if the issue is whether it worsened, that would seem to be a wear and tear exclusion, possibly, which they would have the burden to prove. What Texas authority would you point us to in support of the argument that so long as it's the same insurance company that you can go back in time like this? Oh, I'm just going by what this policy says and by, but I'm not citing a specific case about, you know, I mean, there are a lot of cases I see where the policy came into effect and someone lost because, well, you can prove that the damage didn't occur before the policy went into effect. But this was a single policy. But the damage was relatively recent. Now whether the exact date is going to be difficult to determine. All right. What else do you have? That'll be it. All right. We'll hear from you again for rebuttal. May it please this Court. I know in some recent cases the Court has had some certified questions about concurrent causation that they've thought about or actually have twice certified to the Texas Supreme Court. I don't think we need to go there in this case because I think this case can and should be affirmed based, without having to reach any of the concurrent causation questions. That is because the other side failed to meet, Ms. Thompson, failed to meet her initial burden of proof to show that there was any hail damage during the policy period, which on or about the September 28, 2021 storm. There's no evidence in the record whatsoever that there was hail on or near her property anywhere near that date. Her expert did not try at all to say there was hail during that policy period. Let me ask. That policy year, whatever it was, I assume the policy had some requirement to file a claim within a certain period of time, even after the policy period. All that was satisfied. If she was reporting a claim for a September 21 claim, then it was satisfied. I bet that brings up the question of . . . If causation could be shown as of that date, the blocks have been checked for coverage, causation issue notwithstanding. All right. Just want to make sure of that. But I believe Judge Wilson asked, what is the case? Is there a Texas case that says that if State Farm has insured you for multiple policy periods, then you can go back to any of those policy periods? And the answer to that is no. I've been unable to find a Texas case. I've been unable to find a corporate appeals case. I've been unable to find . . . Have you found a case that says the opposite? Was somebody attempted to do that? I have not. There's several cases from this Court and from the Supreme Court that say that it is the burden on the insured that proving the date of their damage is a precondition to coverage, and the burden is on the insured. I mean, this Court has held that in Hamilton Properties, in New Hampshire Insurance Company, in Stagliano v. Cincinnati Insurance, and I've not seen anything that an insured is excused from that. What is the magistrate's order that we're reviewing? I don't see that in Section A.1, the magistrate said this is outside the coverage period. The magistrate said the loss amount here is below the deductible. He said a couple of things. He said there's no evidence that there was hail damage on that date and that the amount to repair that hail damage exceeded the policy deductible. And then he went on to talk about the concurrent causation and wear and tear as a second ground, but the first ground had to do with no evidence of hail on that date and also, additionally, no evidence of the amount to repair that hail. And that's because Ms. Thompson had relied on an estimate from an unauthenticated estimate from a contractor she did not designate as a trial expert, and so the magistrate did not consider that estimate, leaving her without . . . But wouldn't that have been . . . I had a question, actually, about this is Shinglehut, I guess. Wouldn't they just be a fact witness with expert knowledge? Why did they have to be designated as an expert? Well, they were wanting to put on . . . I have a two-part answer to this, Your Honor. The first part is they were wanting to put on causation evidence. They were wanting to say that it was caused by hail of this storm, which requires some expertise. But also, the magistrate ruled that it was excluded, and that hasn't been challenged on appeal in this court. They aren't challenging the exclusion of that summary judgment evidence. But the storm or site report that was in the Shinglehut was also admitted through Harrison. It was stricken by the trial court . . . No, I know, but Harrison then inserted the same storm or site weather report that said hail on the 28th. I don't think that he did, Your Honor. My understanding is Harrison just had . . . there's about 30 pages of deposition testimony from Mr. Harrison, and that's it. There's no affidavit. There's no expert report. It's just a spattering of deposition testimony, and in it he admits . . . Well, you know, in his deposition he's asked, okay, I'm showing you Exhibit 6, 7, 8, 9, 10. Exhibit 9 is the storm or report. So you have a weather report that says there was a hail storm on the 28th. And he did not agree with that. The expert that was allowed to testify in the summary judgment evidence said, over and over, I'm not saying it was that day. It could have been before. It could have been after. It could have been any time. I don't know. It was some time. And so he was not authenticating, owning, basing his opinion on that. I can look it up here. But quote for me the magistrate opinion that said there was no coverage on that date. I think . . . Because my memory of . . . it's a very thin Section A-1. My memory was the magistrate inexplicably said the loss amount was below the deductible. He said there's no evidence that the amount was above the deductible because State Farm said . . . Right. But State Farm, the West Fire Service, your letter specifically says to the court, Mr. Reed, the umpire agreed the roof sustained hail damage and it exceeded $44,000. So let me answer your first question about the magistrate and then I'll address that question. The magistrate says on the bottom of his floor, so it's 1955 . . . Is this Section A-1? Yes, Section A-1. He says no genuine issue of material fact exists as to whether a September 28, 21 hailstorm damaged the property in excess of the policy's deductible. In excess of the policy's deductible. Right. How can that be reconciled with the appraisal report? So under Texas law, Your Honor, an appraisal award and under the terms of this policy, but I'll start with Texas law. Under Texas law, an appraisal award sets the amount of loss if the loss is determined in court to be covered. Appraisers are not allowed to decide causation or coverage. And there's no indication in this record whatsoever that these appraisers were asked to say, was it hail on that date? Was it hail during this policy period? And was this repairing the hail? They're repairing the roof. And, in fact, the policy . . . Well, let me stop you there. I know you want to get to Texas law and I'm just wondering how much this appraisal is, was performed in a way consistent with some of the case law talking about appraisals. But Texas law does seem to indicate that this sort of determination by appraisals would be relevant if they actually did attempt to determine that this is the amount of damage from hail. Yes. And are you saying this appraisal, the way it's written, doesn't do that? I'm saying, yes, it does not do that. And it couldn't do that under the terms of the insurance policy, which said appraisers . . . This is at 433 of the record. It says appraisal is only available to determine the amount of loss. They cannot decide any questions of fact, any questions of coverage, any other issues. And the appraisers did not say that they did so. There's nothing in this record in this appraisal award. I believe, and I don't have it in front of me, but I believe it specifically says we are not looking at issues of coverage. We're not deciding issues of coverage. They weren't deciding what Mr. Harrison . . . I mean, the same thing that their expert, Mr. Harrison, didn't do is put this loss from this hailstorm. It's not something these appraisers were doing either based on this record. Does it matter? Do you recall the letter from Westfire Services to State Farm? I recall it. Okay. Because there it says it's your exhibit, and it's saying there was a loss on 928 and, quote, Mr. Reed agreed the roof sustained hail damage. So State Farm's own interpretation of the appraisal was 928 hail damage. You're saying the appraiser who was appointed by State Farm is saying that he . . . No, no, no, no, the umpire, Mr. Reed is the umpire, right? Sure, sure, yes. So State Farm's internal documents are saying, okay, the umpire determined it was hail damage, date of loss 928. And my point is, Your Honor, that the umpire is not, under this policy, authorized to do that. The appraisal award is binding only as to amount of loss, not issues of coverage. And so that's why State Farm has, in this case and in other cases, said we're contesting coverage. We understand if . . . Well, can they opine about causation, irrespective of coverage? So Texas law is a bit unclear on that. There's a Johnson . . . State Farm v. Johnson case, which is in different contexts. In some cases you can, in some cases you can't. I do think State Farm v. Johnson is your key case. And it's not very helpful to you, and I'm not sure this appraisal is consistent with it. But it does say, regardless of State Farm's policy language, that appraisers can't do their work without determining causation, a lot of the times. Sometimes. And maybe the issue is whether this is one of those times or not. And it is a difference when it's causation for more than one source, State Farm v. Johnson also says. I was actually . . . How should we use the Johnson case? I think that one key thing about the Johnson case is the policy has changed since then, since the Johnson case. Back at the time the Johnson case was decided, the insurance policy did not say appraisers cannot determine coverage, appraisers cannot determine other causes of fact. And that was done in part because of the Johnson case, because appraisal is just intended to decide the amount of the loss. So you're saying that the Johnson policy would not have had that language? It did not, correct. Okay. Yes. And I wanted to turn to the second ground for summary judgment. I think that there is not evidence, and the appraisal award is not evidence of the amount of the loss, and there is no case that can go back any policy period ever. But even if you could, then we run into a more traditional concurrent causation issue, because there was wear and tear on this, undisputed wear and tear. Their expert agrees there are parts of this roof damaged by wear and tear. And, in fact, this roof had had roof problems dating back to 2017, before Hurricane Harvey. There was roof damage in 2017, in June of 2022. They claim the storm damaged the roof in September, I'm sorry, June of 2021. They claim this storm then hit in September of 2021. No new damage, no new complaints, no new leaks, no new anything after the storm. And so there is a substantial question about which portion of the roof was damaged by wear and tear. It was a 15-year-old roof. And which portion of it was, if any, was damaged by hail. And so we get into the question of their own expert is acknowledging that these two causes both resulted or could have resulted in the need to repair this roof. The court has talked about in other cases, oh, it was an ugly roof, but it was still functioning before the hailstorm. It wasn't. Undisputed summary judgment evidence is it wasn't functioning before the hailstorm. It wasn't. What's the homeowner supposed to do? We've twice tried to certify and get clarity. Have Texas courts developed an answer at all? So specifically in the context of a roof and a hailstorm, what's the homeowner supposed to do to ever survive the concurrent causation? So Texas has not had a case since then. I think there are two cases from this court that have looked at concurrent causation in the context of a summary judgment and two that have looked at concurrent causation in the context of wind and hail or hail. And so I think based on this court's precedent, we can apply the concurrent cause doctrine. An insurer has two options to survive summary judgment. I don't think either of them is particularly onerous. It just wasn't done here. The first one is to say I believe that this entire roof was damaged by hail. An expert can go up on the roof. They do test squares. They can say I tested all every, you know, all four angles of the roof. I found X number of hail. This whole roof is damaged by hail. The whole need to repair it is hail. That's one way to do it, the 100% method. And that's what was done. It doesn't matter when the hailstorm was. You're not stuck. The resident doesn't have to say it was this hailstorm on this day or they do. In this case, we have two different problems, right? We have usually a roofer or an expert is saying this is the hailstorm that damaged it. But they still have to say and it caused this and wear and tear caused this. They didn't meet either of those burdens in this case. They didn't say 100%. Or the second option would be to say, yeah, I admit this slope of the roof had wear and tear. The other three slopes didn't. So those three slopes had significant hail. So those would be 75%. You just have to do one of those two things. You just have to put on a scintilla of evidence saying either all of it or some percentage of it. And that survives on summary judgment, the burden on concurrent cause. The expert didn't do that. He didn't make any effort whatsoever to quantify how much hail was even on the roof. And he didn't say that hail was the only cause of problems with the roof. He said he took a couple sample photos. But he didn't do tests. This is why SAFAR moved to strike this expert and said he's not following scientific method. He's doing nothing but conclusory speculation. But he didn't try to say how much hail was on this roof. Even assuming we're forgiving the fact that it was not from that storm or that he couldn't say it was from that storm, he didn't say how much hail forever, you know, for any period of time. And so there's sort of two different problems, either of which can result in affirmative. What do we do with the neutral umpire? I mean State Farm said it's zero or maximum $541. And she has Shingle Hut, $44,000. We just ignore the neutral umpire? Well, so the Texas Supreme Court has had numerous cases over the last, say, 8 or 10 years. But one that probably is most illustrative on this is the Barber Technologies case. I'm really familiar with that one because I think I might actually have argued all of them. But I argued that one. And what the Supreme Court came back and said is appraisal is like an alternative dispute resolution process. You give it to these neutrals. They get to figure it out, good, bad, or otherwise. That's the answer. And often an insurance company just chooses to pay it to resolve the claim. But when they don't, it doesn't stop the insurance company. They haven't waived coverage arguments. They haven't waived causation arguments. They still get to go to court and litigate their coverage case. And the insured has to meet the burden to prove coverage. And once they prove coverage, I mean I acknowledge that if they prove coverage, that amount is what's owed in this case. But we haven't gotten to the point where they've put on a scintilla of evidence to get to prove coverage by summary judgment. So I wanted to wrap up by saying even if the court has questions about the contract issue here and whether that should have survived summary judgment, the magistrate also methodically went through each of the extra contractual cause of action and explained in detail why each of them fail. And I believe for all of the reasons that the magistrate held, regardless, all of the extra contractual claims should be affirmed on summary judgment. If you don't have any further questions, I hope. Thank you. Thank you. Housing Council was discussing about what an insurer needs to show to establish coverage through an expert or otherwise. Mr. Harrison's testimony was that he did observe hail damage on the roof and that the necessary repair of the damage he saw was to replace the roof. So there's two separate issues. Was there an accidental direct physical loss? And then under the law settlement provision of the policy, what's the amount owed to repair that damage? So he saw hail damage. He then testified in his deposition that to repair that hail damage, you have to replace the roof because of the age and condition of the roof. So we established there are two paths you can do there. We went by the one where you say that, well, if it's covered, all the damage we're claiming is covered because there's hail on the roof that damaged the roof and the only way to fix that is to replace the roof given the condition of the roof. That's how we met our burden of showing covered loss. And the other thing, the State Farm never moved to strike, to vacate the appraisal award in this case based on a coverage determination. So under . . . Sorry, has not done what? They have not. They never moved in the district court to vacate the appraisal award. And if you're saying that the appraisal award's invalid, you're supposed to state the basis of it, which Texas has several, maybe three. One of those is that the appraisal panel exceeded its authority by making a coverage decision, but State Farm never moved to vacate the appraisal award based on a coverage decision. So the appraisal award's still legally binding and effective as the amount of the loss. If they're able to talk about coverage at trial, maybe there's a fact issue there, but Texas courts have said that when it's a hail claim, that the appraisers aren't able to distinguish between hail and preexisting conditions. And the evidence that we did submit from the contractor, Shingle Hut, that we were not introducing that for expert purposes. It was just the documents that put them . . . the legal effect of those documents, what they knew, the information they were provided. Unless there are any questions, I don't know. All right. Thank you. Thanks to both of you. That concludes our arguments for this morning. We are in recess until tomorrow at 9 a.m.